IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ANNE MARIE SCHAEFER,

                    Plaintiff,

vs.                                    Case No. 10-4008-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental

impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993). At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy. Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner
meets this burden if the decision is supported by substantial
evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC). This
RFC assessment is used to evaluate the claim at both step four
and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 18, 2009, administrative law judge (ALJ) Linda
L. Sybrant issued her decision (R. at 11-22). Plaintiff alleges
that she has been disabled since August 31, 2006 (R. at 11).
Plaintiff is insured for disability insurance benefits through
December 31, 2011 (R. at 11). At step one, the ALJ found that
plaintiff has not engaged in substantial gainful activity since
the alleged onset date of disability (R. at 13). At step two,
the ALJ found that plaintiff had the following severe

4

impairments: fibromyalgia and depression/bipolar disorder (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13-15). After determining plaintiff's RFC (R. at 15), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 20). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 20-21). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III. Did the ALJ err in her evaluation of the medical evidence regarding plaintiff's physical limitations?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given

particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. <u>Robinson</u>, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Treating source opinions on issues that are reserved to the Commissioner[1] should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled. SSR 96-5p, 1996 WL 374183 at *2-3.

_____

[1]Issues reserved to the Commissioner include: (1) whether an claimant's impairment meets or is equivalent in severity to a listed impairment, (2) a claimant's RFC, (3) whether a claimant can perform past relevant work, and (4) whether a claimant is disabled. SSR 96-5p, 1996 WL 374183 at *2 (emphasis added).

7

Dr. Veloor, plaintiff's treating physician, provided a medical opinion regarding plaintiff's ability to do work-related physical activities on August 13, 2007 (R. at 464-467). Dr. Veloor indicated that plaintiff could stand/walk for only 2 hours in an 8 hour workday, and could sit for only 4 hours in an 8 hour workday (R. at 464). Dr. Veloor also indicated that plaintiff would need to lie down 2-3 times a day for 30-45 minutes at a time because of chronic pain and fatigue (R. at 465). Dr. Veloor further stated that plaintiff would miss work more than 3 times a month because of her impairments or treatment (R. at 467). Dr. Veloor indicated in his medical records on August 1, 2007, August 30, 2007, and on September 18, 2007 that plaintiff is unable to work due to her pain symptoms, fibromyalgia and psychiatric problems (R. at 514, 512, 511).

The ALJ, after summarizing the opinions of Dr. Veloor, stated the following:

> The undersigned gives little weight to this opinion because it is inconsistent with the signs and findings in the physical exams of record, not supported by any contemporaneous diagnostic tests and inconsistent with claimant's description of her activities of daily living.

(R. at 19). Previously in her decision, the ALJ stated:

> There are no trigger point evaluations for fibromyalgia in the objective medical record. Additionally, there were no opinions from any treating or examining medical professional that the claimant would have any debilitating limitations from a physical impairment.

(R. at 17).

The ALJ gave little weight to the opinions of Dr. Veloor because the opinions were not supported by any exams or tests; the ALJ further stated that there <u>no</u> trigger point evaluations for fibromyalgia in the objective medical record. However, four physical examinations in the medical record clearly contradict the assertion of the ALJ that there were no trigger point evaluations for fibromyalgia. Dr. Veloor stated on March 21, 2006 that plaintiff had multiple paired tender points present along the occipital, trapezius, supraclavicular, intracostal stasis, medial lateral epicondyles, greater trochanters, and bilateral sciatic notches. Dr. Veloor stated that the chronic pain syndrome associated with multiple paired tender points, sleep disturbances and depression were suggestive of fibromyalgia (R. at 522-524). Again, on April 11, 2006, Dr. Veloor stated that the physical examination showed that plaintiff had multiple paired tender points (R. at 521).[2]

On May 9, 2006, plaintiff was examined by Dr. Letourneau. His physical examination of the plaintiff indicated multiple tender points; specifically he found paired tender points in the lateral epicondyles, trapezius, left sacroiliac area,

---

[2]The terms "trigger points" and "tender points" are often used interchangeably. <u>Beauclair v. Barnhart</u>, 453 F. Supp.2d 1259, 1276 (D. Kan. 2006); <u>see e.g.</u>, <u>Moore v. Barnhart</u>, 114 Fed. Appx. 983, 991 (10th Cir. Nov. 19, 2004).

trochanteric bursae, and anserine bursae (R. at 300-301).
Finally, on June 2, 2006, Dr. Veloor stated that the physical
examination indicated multiple pair tender points along bilateral
occipital, trapezius, supraclavicular fossa, lateral epicondyles,
greater trochanters, medial knees and bilateral sciatic notches
consistent with fibromyalgia (R. at 518-519).[3]

Although the ALJ found that plaintiff's fibromyalgia was a
severe impairment, she clearly relied on an incorrect assertion
that there were no trigger point evaluations for fibromyalgia in
the objective medical record in order to discount the severity of
plaintiff's fibromyalgia and its impact on plaintiff's ability to

_____

[3]As this and other courts have repeatedly stated, the
symptoms of fibromyalgia are entirely subjective, and there are
no laboratory tests to identify its presence or severity.
Gilbert v. Astrue, 231 Fed. Appx. 778, 783-784 (10th Cir. Apr.
11, 2007)(the lack of objective test findings noted by the ALJ is
not determinative of the severity of fibromyalgia); Brown v.
Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006);
Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004);
Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000);
Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward
v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999).  Because
fibromyalgia is diagnosed by ruling out other diseases through
medical testing, negative test results or the absence of an
objective medical test to diagnose the condition cannot support a
conclusion that a claimant does not suffer from a potentially
disabling condition.  Priest, 302 F. Supp.2d at 1213.
     Fibromyalgia is diagnosed entirely on the basis of patients'
reports and other symptoms.  Brown v. Barnhart, 182 Fed. Appx.
771, 773 n.1 (10th Cir. May 25, 2006).  The rule of thumb is that
the patient must be positive on at least 11 of the 18 tender
points to be diagnosed with fibromyalgia.  Gilbert, 231 Fed.
Appx. at 783; Brown, 182 Fed. Appx. at 773 n.1; Moore, 114 Fed.
Appx. at 991; Glenn v. Apfel, 102 F. Supp.2d 1252, 1259 (D. Kan.
2000).

work.  Such an incorrect assertion is not harmless error.  The
ALJ also discounted the opinions of Dr. Veloor based on the
incorrect statement that his opinions were inconsistent with the
signs and findings in the physical exams, and were not supported
by any contemporaneous diagnostic tests.  However, both Dr.
Veloor and Dr. Letourneau, based on 4 separate physical exams,
found that plaintiff had multiple paired tender points and
diagnosed fibromyalgia.  As this court has previously stated,
there are no laboratory tests to identify the presence or
severity of fibromyalgia.  <u>Priest</u>, 302 F. Supp.2d at 1213.  The
lack of objective test findings is not determinative of the
severity of fibromyalgia.  <u>Gilbert</u>, 231 Fed. Appx. at 784.

Dr. Veloor stated that the opinions regarding plaintiff's
limitations were based on plaintiff's persistent chronic pain and
fatigue.  As in <u>Priest</u>, 302 F. Supp.2d at 1214, the record in the
case before the court is replete with consistent trigger point
findings and indications in the medical record that plaintiff
suffered from chronic pain and fatigue.  In light of the
consistent and uncontradicted findings of multiple paired tender
points, and the fact that there are no laboratory or objective
tests to identify the severity of fibromyalgia, the ALJ clearly
erred by stating that there were no trigger point evaluations for
fibromyalgia, and by stating that the opinions of Dr. Veloor were
inconsistent with or not supported by any exams or tests.  The

ALJ erred by requiring objective evidence or diagnostic testing for a disease that eludes such measurement. As a general matter, objective findings are not required in order to find that a claimant is disabled. <u>Moore</u>, 114 Fed. Appx. at 992. This case shall therefore be remanded in order for the ALJ to give further consideration to the multiple paired tender point findings, and the opinions of Dr. Veloor regarding the severity of plaintiff's fibromyalgia, in accordance with the case law set forth above.

**IV. Did the ALJ err in her evaluation of the medical evidence regarding plaintiff's mental limitations?**

The record also contains a mental impairment questionnaire from Dr. Bradshaw, who provided psychiatric treatment for the plaintiff. On January 28, 2009, Dr. Bradshaw found that plaintiff had numerous severe or marked mental limitations (R. at 602-608). He indicated that plaintiff had a GAF of 50 (R. at 602).[4] Dr. Bradshaw indicated that plaintiff was not

---

[4]GAF (global assessment of functioning) scores can be found in the <u>Diagnostic and Statistical Manual of Mental Disorders</u>. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school**

malingering, and that her impairments were reasonably consistent with the symptoms and functional limitations (R. at 603). He stated that plaintiff's impairments and treatment would cause plaintiff to miss work more than 3 times a month (R. at 604).

The ALJ summarized the opinions of Dr. Bradshaw, but gave little weight to his opinions, asserting that they were conclusory and inconsistent with the signs and findings in the treatment notes of Dr. Bradshaw, the mental status exams of record and plaintiff's description of her activities of daily living (R. at 19).

Plaintiff argues that such boilerplate findings by the ALJ are inadequate. The court finds that such conclusory findings by

---

**functioning** (e.g., no friends, unable to keep a job)...

11-20: **Some danger of hurting self or others** (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) **OR occasionally fails to maintain minimal personal hygiene** (e.g., smears feces) **OR gross impairment in communication** (e.g., largely incoherent or mute).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).
        Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. A claimant's impairment might lie solely with the social, rather than the occupational sphere. A GAF score of fifty or less, however, does suggest an inability to keep a job. For this reason, such a GAF score should not be ignored. Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).

the ALJ are problematic for several reasons, and they should therefore be addressed when this case is remanded.  First, the ALJ failed to clearly identify the inconsistencies between Dr. Bradshaw's opinions and the signs and findings in the medical records.  When the ALJ fails to explain or identify the claimed inconsistencies between the opinions of the treating medical provider and the treatment notes of the medical providers, the ALJ's reason for rejecting that opinion are not sufficiently specific to enable the court to meaningfully review his/her findings.  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004); Cagle v. Astrue, 266 Fed. Appx. 788, 794 (10th Cir. Feb. 25, 2008).  Furthermore, it is not readily apparent to the court that there are obvious inconsistencies between the treatment notes and the opinions of Dr. Bradshaw.

Second, the court finds that the ALJ's cursory treatment of the opinions of Dr. Bradshaw does not convince or satisfy the court that the ALJ considered all the relevant factors that must be considered when determining what weight to accord to medical opinions of treatment providers.  See Andersen v. Astrue, 319 Fed. Appx. 712, 721-723, 727 (10th Cir. April 3, 2009).  Most of the factors set out in 20 C.F.R. § 404.1527(d), and cited previously in Watkins, were not discussed by the ALJ.

Third, the ALJ never mentioned the fact that the medical record included an opinion from Dr. Sheafor, who evaluated

14

plaintiff on October 8, 2007 and opined that plaintiff had a GAF of 45 (R. at 532-533). The ALJ also failed to mention that psychiatric records from Stormont-Vail Hospital showed that plaintiff had a GAF of 20 on admission on August 13, 2007, and a GAF of 42 at her discharge the next day (R. at 473, 470). Their findings are consistent with the opinion of Dr. Bradshaw that plaintiff had a GAF of 50 on January 28, 2009 and for the past year (R. at 602). A GAF score of 50 or less does suggest an inability to keep a job; these GAF scores, from three different medical sources, thus provide support in the medical evidence for Dr. Bradshaw's opinion that plaintiff has severe mental impairments that would prevent her from working.[5]

Fourth, Dr. Bradshaw's opinions are supported by the opinions of Dr. Veloor, another treatment provider, who indicated on a number of occasions that plaintiff would be unable to work because of a combination of pain, fibromyalgia and her psychiatric problems (R. at 514, 512-513, 511). Thus, both treatment providers opined that plaintiff's mental impairments would keep her from working. An ALJ must not consider the opinions of treating and examining sources in isolation, but those opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of

_____

[5]The vocational expert (VE) testified that a person with the limitations set out in Dr. Bradshaw's report would be unable to work (R. at 43).

other treating and examining sources.  The court is concerned

with the necessarily incremental effect of each individual report

or opinion by a source on the aggregate assessment of the

evidentiary record, and, in particular, on the evaluation of

reports and opinions of other treating and examining sources, and

the need for the ALJ to take this into consideration.  <u>See</u> <u>Lackey</u>

<u>v. Barnhart</u>, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5,

2005).

Because this case is being remanded for other reasons, the

court will note one additional issue that the ALJ should consider

on remand in order to expedite resolution of this case even

though it was not specifically raised by the parties.  The ALJ

found that the state agency opinions were consistent with the

evidence, and gave "controlling" weight to their opinions (R. at

19).  Dr. Cohen prepared the state agency mental assessment, and

found that plaintiff had moderate limitations in six categories

(R. at 394-395).[6]  However, plaintiff's RFC mental limitations,

as determined by the ALJ, indicated that plaintiff was to have

---

[6]Dr. Cohen found that plaintiff had moderate limitations in
the following categories: 1) the ability to understand and
remember detailed instructions, 2) the ability to carry out
detailed instructions, 3) the ability to maintain attention and
concentration for extended periods, 4) the ability to perform
activities within a schedule, maintain regular attendance, and be
punctual within customary tolerance, 5) the ability to interact
appropriately with the general public, and 6) the ability to get
along with coworkers or peers without distracting them or
exhibiting behavioral extremes (R. at 394-395).

limited contact with the general public and superficial contact with coworkers and supervisors, and is restricted to low stress work (R. at 15). Given the fact that the ALJ gave controlling weight to the opinions of Dr. Cohen, the ALJ offered no explanation for only incorporating some, but not all, of the moderate limitations set forth by Dr. Cohen into her RFC findings for the plaintiff. On remand, the ALJ is reminded that her RFC findings should be made in accordance with the requirements of SSR 96-8p. According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

**V. Did the ALJ err in her analysis of plaintiff's credibility?**

The court will not address in detail plaintiff's allegations of error with respect to the ALJ's credibility findings because

those findings may be affected on remand by the ALJ's reconsideration of the opinions of medical treatment providers, as set forth above.  See <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1085 (10th Cir. 2004); <u>Cagle v. Astrue</u>, 266 Fed. Appx. at 796. However, a few of the credibility issues will be addressed in order to expedite resolution of this case.

First, the ALJ relied on plaintiff's daily activities, which the ALJ discussed in detail (R. at 18), as a basis for discounting plaintiff's claims of disabling pain and as a basis for discounting the opinions of her two treating medical providers (R. at 18, 19).  According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2010 at 396).

Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, <u>Thompson v. Sullivan</u>, 987 F.2d  1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  <u>Thompson</u>, 987 F.2d at 1490; <u>see</u> <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983)(the fact that claimant admitted to working in his yard, performed a few

household tasks, worked on cars, and took occasional trips was found by the court to be activities not conducted on a regular basis and did not involve prolonged physical activity; while this evidence may be considered along with medical testimony in the determination of whether a party is entitled to disability benefits, such diversions do not establish, without more evidence, that a person is able to engage in substantial gainful activity). One does not need to be utterly or totally incapacitated in order to be disabled. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.** As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in

and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries. We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends. We found this to be an unpersuasive reason to deny benefits: "We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.' " Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.

Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

Plaintiff's daily activities, which consist of ordinary life activities, as the court found in Draper, do not clearly establish that plaintiff is able to work full time. On remand, the ALJ should therefore keep in mind that evidence of housework and daily activities does not preclude a finding of disability.

Second, the ALJ noted that plaintiff had stated that she had worked for 20 years, which was long enough; the ALJ further noted that plaintiff is currently receiving disability payments from the Veterans Administration and public assistance. The ALJ argued that this reflects that plaintiff has little motivation to work (R. at 17). However, the mere fact that plaintiff has received disability payments from another source and public assistance would indicate that it is equally probable that a bona fide disability accounts for plaintiff's failure to return to work. See Stonebraker v. Shalala, 827 F. Supp. 1531, 1536 (D. Kan. 1993). Furthermore, although another agency's determination of disability is not binding on the Social Security Administration, it is evidence that the ALJ must consider and explain why he/she did not find it persuasive. Grogan v. Barnhart, 399 F.3d 1257, 1262-1263 (10th Cir. 2005).

Finally, the ALJ stated that the fact that plaintiff was advised to exercise is inconsistent with plaintiff's allegations regarding her physical limitations (R. at 17). The medical records indicate that physical therapy was prescribed by

plaintiff's physician for plaintiff's fibromyalgia (R. at 295).
The adjudicator is not free to substitute his/her own medical
opinion for that of a disability claimant's treating doctors.
Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ
is not entitled to *sua sponte* render a medical judgment without
some type of support for his/her determination.  The ALJ's duty
is to weigh conflicting evidence and make disability
determinations; he is not in a position to render a medical
judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan.
2002).  An ALJ may reject a treatment provider's opinion outright
only on the basis of contradictory medical evidence and not due
to the ALJ's own credibility judgments, speculation or lay
opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir.
2004).  The ALJ failed to cite to any medical evidence supporting
her assertion that exercise is inconsistent with her allegations
of disabling limitations.

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is reversed and remanded pursuant to sentence four
of 42 U.S.C. § 405(g) for further proceedings consistent with
this memorandum and order.

Dated this 7th day of February 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow
U.S. District Senior Judge